IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bryant Braxton,<br><br>                              Plaintiff,<br><br>vs.<br><br>Leon Lott, in his representative capacity for the Office of the Richland County Sheriff, and Mike Wenzell, Jason Cuzzupe, and D. McRoberts, in their individual capacities,<br><br>                              Defendants. | C/A No. 3:21-cv-3649-JFA-SVH<br><br><br><br>**OPINION AND ORDER** |

## I.      INTRODUCTION

Plaintiff Bryant Braxton, ("Plaintiff"), proceeding through counsel, brings this action pursuant to 42 U.S.C. § 1983 alleging that he was arrested without probable cause. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. Specifically, the Magistrate Judge conducted an initial review of Defendants' motion for summary judgment. (ECF No. 52).

After reviewing the motion for summary judgment and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that the motion for summary judgment be granted in part and denied in part. (ECF No. 68). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

1

Defendants filed objections to the Report on June 28, 2023. (ECF No. 71). Thus, this matter is ripe for review.

## II.    STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150,

at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III.     DISCUSSION

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report and therefore, no further recitation is necessary here. (ECF No. 68). In short, Defendants aver that they are entitled to qualified immunity and separately that they are entitled to an award of summary judgment on the merits. The Report rejected both contentions and concluded that Plaintiff's §1983 claim brought under the Fourth Amendment should be allowed to proceed.[1]

---

[1] The Report also recommends that Plaintiff's state law claims, which encompass his first five causes of action, be dismissed as Plaintiff has withdrawn them. Because this conclusion has

Defendants have asserted two separate objections which amount to a disagreement with the Report in virtually all regards. In general, Defendants contend that: (1) the Magistrate Judge erred with respect to the merits of Plaintiff's claim; and (2) the Magistrate Judge erred with respect to qualified immunity. The court will address each objection in turn.

A.  Merits

Initially, Defendants aver that the Report improperly concludes that the record evidence taken in light most favorable to Plaintiff indicates that Officer Jason Cuzzupe listed the 532 Atterbury address as Plaintiff's residence with reckless disregard for the truth. Defendants further take issue with the Report's conclusion that a review of the evidence in the light most favorable to Plaintiff indicates Cuzzupe also had obvious reasons to doubt the accuracy of Officer McRoberts' identification. When correcting these errors as Defendants suggest, the evidence allegedly reveals a strong showing of probable cause.

Defendant Cuzzupe erroneously listed 532 Atterbury Drive, the residence where officers performed the knock and talk, as Plaintiff's address in the arrest warrant. Defendants object to the conclusion that this information was included with reckless disregard for the truth. In support of this contention, Defendants point out that Cuzzupe had investigated a separate crime in 2018 and visited this address to inquire about Plaintiff. While there, he spoke with Plaintiff's brother who made no representation that Plaintiff

_____

garnered no objections, it will be adopted without further discussion. Thus, Plaintiff's first five causes of action are dismissed with prejudice and the sole remaining claim is count six which is brought pursuant to 42 U.S.C. §1983 for an unreasonable seizure in violation of the Fourth Amendment.

had not lived there. When deposed in this action, Cuzzupe answered "yes" when asked "is it fair to say you did no investigation to determine who lived at 532 Atterbury prior to going there?"

Accordingly, Defendants contend that officers could reasonably rely on an inability to confirm that Plaintiff did not live at this residence over a year prior when investigating a separate crime as the basis for concluding the Plaintiff did indeed live there when swearing out the warrant affidavit. Although such an inference is theoretically possible, Defendants' contention would have this court weigh the evidence and construe the inferences in their favor. Such a proposition is simply untenable in adjudicating the instant motion for summary judgment. Defendants specifically argued that while "unsuccessful in immediately locating Plaintiff, Cuzzupe departed the address without any confirmation or indication that Plaintiff did not have a substantial connection to 532 Atterbury." (ECF No. 71, p. 4). Somehow, Defendants believe a failure to confirm lack of information is synonymous with confirmation of information. Not so. A jury could easily look at the same facts and conclude that Defendants had no reason to believe Plaintiff indeed lived at 532 Atterbury and therefore the truth has been recklessly disregarded.

Additionally, Defendants take issue with the Magistrate Judge's citation to "one portion form Cuzzupe's deposition" in concluding that Cuzzupe had little or no basis to believe that Plaintiff had resided, or otherwise had a significant connection with 532 Atterbury. Defendants fail to consider that the Report also mentions that Plaintiff's booking photo, shown to McRoberts, and the incident report completed by Cuzzupe, both listed Plaintiff's address as 544 Sedgewood Drive, not 532 Atterbury. Moreover, Cuzzupe

testified that no physical evidence was recovered from 532 Atterbury indicating Plaintiff had been there, much less resided there. Thus, Defendants are incorrect in asserting that the Magistrate Judge relied on one deposition excerpt taken out of context when reaching this conclusion. Consequently, the court agrees with the conclusion that "[a]lthough Cuzzupe testified he had heard rumors in the past that Plaintiff resided at 532 Atterbury and had once talked to Plaintiff's brother at that address, the record evidence taken in light most favorable to Plaintiff indicates that Cuzzupe listed the 532 Atterbury address and identified this address as Plaintiff's residence with reckless disregard for the truth." (ECF No. 68, p. 18-19).

Next, Defendants take issue with the Report's conclusion that "[t]urning to McRoberts' identification, a review of the evidence in the light most favorable to Plaintiff indicates Cuzzupe also had obvious reasons to doubt the accuracy of the identification." (ECF No. 68, p. 21).

Defendants argue the following facts belie the Report's conclusion:

• During a "knock and talk" investigation at 532 Atterbury Drive in Meadowlakes, McRoberts observed an African American male, roughly 5'8" to 5'10" running from the back of the house carrying a backpack. The subject ran through the backyard and then jumped the back fence. McRoberts called out the description of the subject, his clothing, and backpack and on the radio. *See* Dkt 52-1, pp. 1-2.

• The back door of 532 Atterbury was open and officers cleared the residence to ensure there was not an active burglary in progress. During this clearing of the house, McRoberts observed a large clear plastic bag containing green plant material, believed to be marijuana. A search warrant was obtained and executed which revealed, inter alia, four-wheeler vehicles in the backyard. One had been reported stolen from Orangeburg County and the other vehicle did not contain a serial number. *Id.*, p. 2.

• At or about this time, Wenzel -- who was neither part of the investigation nor in proximate vicinity of the neighborhood -- heard radio chatter pertaining to officers setting up a perimeter after a suspect fled from an Atterbury Drive address in Meadowlake subdivision. Wenzel had a discussion with Cuzzupe as to the possible identity of the perpetrator. Given their knowledge and history regarding Plaintiff, Plaintiff's name was mentioned as a possible subject. *Id.*, p. 4.

• Wenzel retrieved detention center images of Plaintiff and his brother and provided them to Cuzzupe. McRoberts, who did not know Plaintiff or had any previous dealings with him, positively identified Plaintiff at that time from the photograph. *Id.*, p. 4.

• The backpack was thereafter located and contained approximately four pounds of a green plant like material believed to be marijuana, and a Sig Sauer handgun. *Id.*, pp. 4-5.

(ECF No. 71, p. 5).

Defendants aver that when "[r]educed to its essentials, the purely legal question here is whether Cuzzupe could permissibly rely upon McRoberts' identification of Plaintiff as the fleeing suspect in order to seek the arrest warrant." The problem with this assertion is that the "purely legal question" relies on disputed facts. First, Defendants argue there is no evidence to suggest that "prior to the knock-and-talk, Cuzzupe identified Plaintiff as the subject in question." However, the Report plainly stated that "Joe Lewis White ("White"), however, included in his officer statement that, prior to Cuzzupe's knocking on the door, a 'pre briefing' was conducted in which he 'learned that the subject in question was named Bryant Braxton.'" (ECF No. 68, p. 4). Hence, a genuine issue of material fact exists.

Defendants next argue that the record is devoid of any inference that prior to, or at the time McRoberts was shown Plaintiff's photograph that "Cuzzupe informed McRoberts as to his and Wenzel's belief the fleeing person was Plaintiff." Defendants aver there is no

indication that Cuzzupe or Wenzel actually believed Plaintiff to be the fleeing person, nor is there any inference that Cuzzupe or Wenzel offered their opinion that Plaintiff was the fleeing person. The court finds this assertion tough to square with the fact that Defendants argue the evidence shows "Wenzel -- who was neither part of the investigation nor in proximate vicinity of the neighborhood -- heard radio chatter pertaining to officers setting up a perimeter after a suspect fled from an Atterbury Drive address in Meadowlake subdivision. Wenzel had a discussion with Cuzzupe as to the possible identity of the perpetrator. Given their knowledge and history regarding Plaintiff, Plaintiff's name was mentioned as a possible subject." (ECF No. 71, p. 5). So, in one breath, Defendants argue that Wenzel and Cuzzupe never actually believed Plaintiff was the fleeing person, but also state the two had a discussion about the fleeing individual and "Plaintiff's name was mentioned as a possible suspect." These assertions appear contradictory on their face and create a genuine issue of material fact.

Also, Defendants aver that the facts merely show that Cuzzupe and Wenzel simply sent McRoberts a picture bearing Plaintiff's name and McRoberts formulated his own conclusions. This begs the question: why would Wenzel send McRoberts a photo of a person he did not believe to be the perpetrator? Also, body camera footage showed that, while searching, McRoberts received a call from Cuzzupe, who advised, "Hey Cap. I just spoke with Investigator Wenzel. We believe it's going to be this guy that he got this time last year." (*See* ECF No. 62-13 at 18:52:10–18:52:36). Thus, a genuine issue of material fact exists as to whether Cuzzupe and Wenzel "simply sent McRoberts a picture bearing Plaintiff's name and McRoberts formulated his own conclusions." (ECF No. 71, p. 6).

Additionally, the Court would note that Defendants repeatedly point out alleged missteps or omissions in the Magistrate Judge's analysis. However, Defendants' objections appear to suffer a similar flaw. Specifically, the Report's conclusion was based, in part, on the Defendants' failure to account for exculpatory omissions when requesting an arrest warrant. Defendants' objections completely fail to address these points. For instance, the Magistrate Judge noted that Defendants possessed numerous pieces of exculpatory information such as Plaintiff repeatedly informing officers he was at work at the time of the incident[2], the owner of the residence reporting Plaintiff did not reside there, and a fingerprint analysis which provided a negative result for Plaintiff. Cuzzupe failed to account for any of this information in the arrest warrant affidavit.

The law surrounding probable cause determinations relates not only to incorrect facts which were included intentionally or recklessly, but also to material exculpatory information which was intentionally or recklessly omitted. *Miller v. Prince George's County, MD*, 475 F.3d 621, 627 (4th Cir. 2007). When construing the evidence in a light most favorable to the Plaintiff, the exclusion of the above exculpatory facts could have affected a probable cause analysis by the reviewing Judge. Therefore, these omissions are material. Thus, Defendant's arguments that the Magistrate Judge erred in concluding that Defendants are not entitled to summary judgment on the merits is overruled.

Within their motion, Defendants argued that there is no duty to exhaust every lead which may provide exculpatory information or conduct a perfect investigation prior to

---

[2] Prior to arrest, Plaintiff spoke with Cuzzupe directly to inform him Plaintiff was at work during the relevant period and went so far as to provide Cuzzupe with his employer's contact information.

seeking an arrest warrant. The court agrees that the law does not hold officers to such an exacting standard. *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 418–19 (4th Cir. 2005)("The fact that Livingston did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification."); *see also Wadkins v. Arnold,* 214 F.3d 535, 543 (4th Cir. 2000) ("The question before us is not whether [the officer] exhausted every potential avenue of investigation."); *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer *might* have taken that *might* have shaken his belief in the existence of probable cause.").

However, this is not a case wherein officers failed to track down every lead or negligently failed to discover an exculpatory fact before seeking an arrest warrant. The evidence here, when construed in a light most favorable to the Plaintiff, is that Plaintiff affirmatively contacted Defendants, specifically Cuzzupe, numerous times prior to his arrest to state that he was not the suspect they were searching for and to provide them with evidence to support his alibi. This was not a fact that officers missed or were unable to verify in an exigent situation. This is a fact officers repeatedly ignored for days after it was served on a silver platter.[3] *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005)("Of course, to ignore exculpatory evidence, one must first be aware of it.").

---

[3] In addition to Plaintiff's attempts to provide documentation of his alibi, Cuzzupe arrested Plaintiff at his place of employment and could have confirmed Plaintiff's alibi prior to effectuating arrest.

10

Law enforcement officers are not required to conduct a perfect and complete investigation prior to seeking an arrest warrant. However, officers cannot bury their heads in the sand or disregard readily available exculpatory evidence of which they are aware. *See Wadkins,* 214 F.3d at 541("Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause."); *see also Brown v. Wiita*, 7 F. App'x 275, 279 (4th Cir. 2001)("In sum officers who mistakenly arrest the wrong person are immune from § 1983 liability unless they act in an objectively unreasonable manner in the circumstances, as for example, in failing to investigate readily available exculpatory evidence."). That is the exact scenario presented here when Plaintiff attempted to provide documentation supporting an alibi mere days before Cuzzupe swore out his warrant affidavit.

Certainly, documented proof that a suspect was at work during the time of a knock and talk would be highly exculpatory and relevant to a Magistrate Judge's determination of probable cause. This is doubly true when considering the owner of the subject residence confirmed no adult male lived there and a fingerprint analysis produced negative results for Plaintiff.

In summation, Defendants' objection that the Magistrate Judge erred in denying the motion for summary judgment on the merits is respectfully overruled.

11

B.  <u>Qualified Immunity</u>

Defendants next take issue with the Magistrate Judge's analysis of the doctrine of qualified immunity. The two-step analysis required for qualified immunity is well-established but bears repeating here:

> First, we must determine, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Only if the answer is "yes" do we advance to the next, sequential step, which is to ask whether the right asserted was clearly established at the time of the events at issue. We conduct this latter inquiry by determining whether a reasonable officer would have understood that his conduct violated the asserted right. The answer to both [] questions must be in the affirmative in order for a plaintiff to defeat a defendant police officer's motion for summary judgment on qualified immunity grounds.

*Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 626–27 (4th Cir. 2007)(cleaned up).

Here, Defendants aver that the Magistrate Judge failed to give the second question of the qualified immunity analysis its due diligence. In essence, Defendants assert that the Report discusses the right at issue in far too general terms. The Supreme court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018)(internal quotations omitted).

To that end, Defendants aver that the Report identifies no case where, for instance, (1) an officer takes information gathered by another officer during an official investigation and appears before a judicial official to seek an arrest warrant; (2) an officer views a photograph and positively identifies a subject as the offender and then conveys this

information to another officer who in turn procured the warrant for Plaintiff's arrest; or even where (3) the arrest warrant affiant relies upon the representations of his supervising officer and veteran police officer of 28 years as a primary or sole basis for probable cause.

However, Defendants assertion pushes the constitutional maxim that the law be clearly established too far toward the opposite end of the spectrum. Defining the right as Defendants have suggested would require a court to present nearly identical facts and circumstances before holding such a right could be violated. It would be virtually impossible to find a case involving facts such as an affiant relying on the positive photo identification from a supervisor with 28 years of experience. "However, there does not need to be a case directly on point for a right to be clearly established." *Gilliam v. Sealey*, 932 F.3d 216, 235 (4th Cir. 2019).

Here, the right at issue is more properly identified as the right to be free from an arrest based upon a warrant affidavit containing incorrect identification and address and excluding known exculpatory information such as a documented alibi.

While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate. Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. But a body of relevant case law is usually necessary to clearly establish' the answer with respect to probable cause. *D.C. v. Wesby*, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018)(internal quotations and citations omitted).

Here, there is a wealth of case law surrounding the proposition that a warrant for arrest may not be founded upon a "deliberate falsehood or of reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court developed a two-prong test clarifying what a criminal defendant must show when challenging the veracity of statements made in an affidavit supporting a warrant.

The first prong of the *Franks* test requires showing that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). "Reckless disregard" means "the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017).

The *Franks* test "applies not only to cases in which an agent includes affirmatively false statements in a warrant affidavit, but also when an agent omits relevant facts from the affidavit." *Lull*, 824 F.3d at 114 (citing *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). A claim based on an omission requires showing that the agent "intentionally and/or recklessly omitted information that was material to the determination of probable cause." *Id.*

The second prong requires showing that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Lull*, 824 F.3d at 114. "To determine materiality, the Court must excise the offending

inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." *Humbert*, 866 F.3d at 556.

"Although an officer may not disregard readily available exculpatory evidence of which the officer had been made aware, an officer's failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." *Smith v. Reddy*, 101 F.3d 351, 357 (4th Cir. 1996).

Furthermore, the Fourth Circuit has specifically stated:

> The law was unquestionably clearly established at the time of the events at issue here. Det. Dougans had "fair warning," that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause. No reasonable police officer in Det. Dougans's position could believe that the Fourth Amendment permitted such conduct. As we explained a decade ago, a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false.

*Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 632 (4th Cir. 2007)(cleaned up).

Moreover, the Report specifically cited to *Nero v. Mosby*, 890 F.3d 106 (4th Cir. 2018) and *Smith v. Munday*, 848 F.3d 248, 254 (4th Cir. 2017). In *Mundy*, the Fourth Circuit denied qualified immunity to investigating officers who conducted no investigation and consequently arrested the wrong individual. *Id.* The court specifically stated that an "investigating officer need not exhaust every potential avenue of investigation. But an investigating officer must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime." *Munday*, 848 at 254. In *Nero*, the Fourth Circuit further discussed the use of false statements in probable-cause affidavits by

15

reaffirming that "when viewing all the evidence, the [drafter] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Nero,* 890 at 129 (quoting *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 632 (4th Cir. 2007)).

Here, when the facts are viewed in a light most favorable to the Plaintiff, Defendants recklessly disregarded Plaintiff's actual address, had reason to doubt the photo identification, and ignored readily available exculpatory information from several sources.

It can hardly be argued that Defendants were unaware that recklessly including false information and omitting readily available exculpatory facts could violate Plaintiff's constitutional right to be free from an unreasonable seizure. Although this exact situation may not have been adjudicated before, there is sufficient case law to put Defendants on notice that recklessly including false information and excluding material exculpatory information in support of probable cause for arrest runs afoul of the constitution. *Dean for & on behalf of Harkness v. McKinney*, 976 F.3d 407, 418 (4th Cir. 2020)("Further, this Court has found that we need not—and should not—assume that government officials are incapable of drawing logical inferences, reasoning by analogy, or exercising common sense. In some cases, government officials can be expected to know that if X is illegal, then Y is also illegal, despite factual differences between the two.")(Internal quotations omitted).

At base, Defendants argue that the officers are entitled to qualified immunity because they "reasonably but mistakenly concluded that probable cause was present." Defendants may be correct if the facts were uncontested and favorable to them. However,

whether their mistakes were reasonable is up for debate. A debate better suited for resolution by the jury.

Defendants are correct that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). However, there does not need to be a case directly on point for a right to be clearly established, and the fact that the materiality of incorrect statements and exculpatory omissions is a fact-specific inquiry does not excuse Defendants from abiding by clearly established law regarding proper police conduct. "Clearly established ... includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Id.* at 240 (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). "In the end, the lodestar for whether a right was clearly established is whether the law 'gave the officials fair warning that their conduct was unconstitutional.'" *Id.* at 238 (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)).

There can be no reasonable dispute that it was clearly established at the time Cuzzupe swore out his warrant application that an arrest in the absence of probable cause was a violation of an individual's Fourth Amendment rights, and that a warrant containing false information and excluding relevant exculpatory information could not form the basis of probable cause for an arrest.

Accordingly, the Magistrate Judge did not err in concluding that qualified immunity is not appropriate here.

C. Individualized Assessment

Defendants finally aver that the Report failed to provide a separate qualified immunity analysis for each of the three officers named in their individual capacities. On this point, the court is constrained to agree.[4] As the Supreme Court has stated, each government official is only liable for his or her own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Put differently, Plaintiff is required to show "that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

As to McRoberts, his involvement consisted of having arrived on the scene; observing the suspect run out of the back of the house and through the backyard; conducting a protective sweep and a subsequent search of the house; and then receiving a photograph in which he made an identification. He had no interactions with Plaintiff and no additional involvement with securing the arrest warrant. Thus, there is no evidence McRoberts violated Plaintiff's clearly established right to be free from unreasonable seizure. Thus, McRoberts is entitled to summary judgment,

---

[4] It is unsurprising that the Magistrate Judge performed a general analysis of Defendant's claims for qualified immunity considering that Defendants' motion for summary judgment made no individualized argument as to each officer and instead averred that Defendants were collectively entitled to qualified immunity. Likewise, Plaintiff argued that "Defendants combined to present materially false information." Courts are under no obligation to adjudicate arguments never presented. Because Defendant failed to request an individualized assessment, the Magistrate Judge did not err in providing a collective analysis of the facts provided. *Gilliam v. Sealey*, 932 F.3d 216, 229–30 (4th Cir. 2019)("[I]t would be counterproductive to require a district court to wade through convoluted issues of fact at this stage in order to determine individual liability, where [] Appellants did not raise individualized qualified immunity arguments before the district court but instead asserted collective qualified immunity defenses."). However, because Defendants are entitled to a *de novo* review here, the court will address the need for an individualized assessment.

As to Wenzel, at no time was he on the subject property or even in subject neighborhood. His involvement consisted of listening to the discussions over police radio regarding a suspect having fled from an Atterbury Drive address in Meadowlakes subdivision. He spoke with Cuzzupe and based on their shared history with Plaintiff and the neighborhood, Plaintiff's name was mentioned as a possible suspect. At that point, Wenzel pulled Plaintiff and his brother's booking photos and transmitted them to Cuzzupe. He had no interactions with Plaintiff and no additional involvement. Thus, there is no evidence Wenzel violated Plaintiff's clearly established rights. Accordingly, Wenzel is entitled to summary judgment.

However, the court disagrees that Cuzzupe is likewise entitled to summary judgment. Cuzzupe was the lead investigator in this case. He was responsible for investigating the community complaints, organized and led the knock and talk search at 532 Atterbury Drive, swore out the arrest warrants for Plaintiff, and appeared before the grand jury in Plaintiff's criminal case.

Defendants assert that Cuzzupe "is entitled to qualified immunity unless his act of seeking the arrest warrant in reliance upon McRoberts' identification 'was clearly prohibited' by preexisting law." (ECF No. 71, p. 14). Defendants portray Cuzzupe's involvement too narrowly. As stated above, when construed in a light most favorable to the Plaintiff, Cuzzupe was involved in the mistaken identification, recklessly disregarded Plaintiff's true address, and omitted exculpatory information in his arrest warrant. Specifically, body camera footage showed that, while searching, McRoberts received a call from Cuzzupe, who advised, "Hey Cap. I just spoke with Investigator Wenzel. We believe

it's going to be this guy that he got this time last year." (See ECF No. 62-13 at 18:52:10–18:52:36). Moreover, Plaintiff informed Cuzzupe that Plaintiff was at work on the day in question and could not have been the person they were looking for, providing Cuzzupe with his work address and employer's phone number, among other information. Additionally, the evidence gathered at the January 15, 2020, scene tested negative for Plaintiff's prints, the same day Cuzzupe swore out the warrants on Plaintiff and the day before Plaintiff was arrested. Lastly, Cuzzupe showed reckless disregard for whether 532 Atterbury was Plaintiff's true address because he performed no investigation as to whether Plaintiff actually lived there.

As recounted above, the right to be free from a search and seizure absent probable cause is clearly established. By recklessly identifying the wrong address and omitting material exculpatory information from the arrest warrant, Cuzzupe is not entitled to qualified immunity.

## IV.    CONCLUSION.

After a thorough review of the Report, the applicable law, and the record of this case, the Court finds no clear error in the Report, but further modifications are warranted. After a *de novo* review of each part of the Report to which Petitioner specifically objected, the Court hereby adopts the Report and Recommendation with the following modifications: Defendants Wenzel and McRoberts are entitled to summary judgment because Plaintiff has failed to show that the actions attributable to these individual officers violated his constitutional rights.

In summation, for the reasons discussed above and in the Report, Defendants' motion for summary judgment (ECF No. 52) is granted in part and denied in part. Specifically, Plaintiff's first five causes of action are dismissed with prejudice and Defendants Wenzel and McRoberts are granted summary judgment as to Plaintiff's § 1983 claim. Defendant Cuzzupe's motion for summary judgment as to Plaintiff's § 1983 claim is denied.

IT IS SO ORDERED.

August 10, 2023                          Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge